United States District Court
Southern District of Texas
**ENTERED**

March 12, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

DIEGO ARMANDO SOLIS, §
§
     Plaintiff, §
§
VS. § CIVIL ACTION NO. 7:22-CV-232
§
MARCO RUBIO, *et al.*, §
§
     Defendants. §

## <u>ORDER AND OPINION</u>

In August 2017, the United States Department of State denied Plaintiff Diego Armando Solis's application for the renewal of his passport, informing Plaintiff that he had not established that he was a United States citizen. As a result, Plaintiff filed this action under 8 U.S.C. § 1503, seeking a declaratory judgment that he is a United States national.

In February 2025, the Court held a one-day bench trial. Based on the trial record and the applicable law, the Court concludes that Plaintiff has demonstrated by a preponderance of the evidence that he was born in the United States and, as a result, is a citizen of this country.

### I.     Findings of Fact

At trial, the Court heard testimony from four fact witnesses: Francisco Javier Solis Gaona, Plaintiff's father; Ruth Idalia Cortez Alanis, Plaintiff's mother; Sylvia Salinas, a midwife who Plaintiff claims delivered him; and Plaintiff himself. Javier Cavazos Adame, a Criminal Fraud Investigator for the United States Consulate General, also testified by deposition.[1] Based on the testimony, the admitted exhibits, and judicially-noticed facts, the Court reaches the following findings of fact regarding Plaintiff's birth.

---

[1] *See* Cavazos Deposition (PX9), Doc. 73–2. During the trial, and based upon an agreement between the parties, the Court explained that it would consider the deposition transcript as trial testimony.

In 1991, Gaona and Cortez married in Mexico. Seven years later, they were living in Reynosa, Mexico, when Cortez became pregnant with Plaintiff.[2] She began visiting the Santa Maria Maternity Clinic in Hidalgo, Texas, to receive midwifery services from Salinas. At that clinic, Salinas provided prenatal care and delivered babies, offering her services to a clientele almost exclusively of Mexican nationals, who paid her between $600 and $1,000. She delivered 20 to 30 babies per month. Her services included prenatal care, the delivery of the baby, and post-birth documentation, such as a certificate with the baby's footprints and a receipt of payment. In part, she provided the documentation to the parents to facilitate their return to Mexico with a newborn through a port of entry on the border. Her services also included registering the baby's birth with the City of Hidalgo to obtain a Texas Birth Certificate.

Gaona and Cortez lived about a 35-minute drive from the clinic. Starting at about her third month of pregnancy, Cortez visited Salinas once a month. The frequency of her visits increased to every other week when Cortez reached six or seven months in her pregnancy.

On June 11, 1999, Cortez went into labor. The couple drove together to the clinic, arriving in the late afternoon or early evening. They stayed at the clinic through the night. A record from Salinas's clinic contains Cortez's fingerprint, taken "before the birth" at 5:00 a.m. on June 12. (Clinic Record (PX3), Doc. 72–3, 4)

At 10:20 a.m. on June 12, Cortez gave birth to Plaintiff. The Clinic Record contains Cortez's fingerprint "after the birth," reflecting the time as 2:30 p.m. (*Id.*) A "Birth Certificate" from the Santa Maria Maternity Clinic contains the footprints and a picture of a newborn. Both Cortez and Gaona confirmed that the photograph is of the Plaintiff.

The parents and their newborn left the clinic that same afternoon. Before they departed, Salinas provided Gaona with the clinic's "Birth Certificate," a receipt for the payment of $680, and another certificate that contained Plaintiff's footprints and his birth data, such as his weight,

---

[2] The couple already had one son, born in Mexico. And Plaintiff also has a younger sister, born in Texas.

length, and APGAR score.  On their way home, the family made a few stops to pick up supplies and possibly have Plaintiff vaccinated.

Nine days later, on June 21, Cortez and Gaona visited a Mexican government agency and registered Plaintiff as having been born in Mexico. (Mexican Birth Certificate (DX1), Doc. 74–1) When they presented themselves at the Mexican agency, they informed the officials that Plaintiff had been born in the United States.  But the officials told them that they had to register the birth as having occurred in Mexico, and that they could correct the documentation at a later date.[3]

On July 1, 1999, Salinas registered Plaintiff's birth with the City of Hidalgo.  She did not immediately register the birth because at the time, the City allowed her to submit paperwork for newborns in batches.  She would do so about once a month.  Plaintiff's Texas Birth Certificate (PX1, Doc. 72–1) contains information consistent with the clinic records, including the date and time of the birth.[4]

The trial exhibits also include two vaccination records for Plaintiff, including his immunization history from the Texas Department of State Health Services, and his School/Day Care Immunization Record from 2002.  Cortez recalled vaccinating Plaintiff only in the United States.  The Texas record lists numerous vaccinations in Texas, but reports "UNK-Unknown" as the manufacturer for most of them.  The identification of the manufacturer as "UNK-Unknown" is at odds with the statutory requirements in place at the time, which required a manufacturer and lot number to be recorded for each administered vaccine. *See* National Childhood Vaccine Injury Act of 1986 (NCVIA), 42 U.S.C. § 300aa-25(a) (effective December 22, 1987).  In addition, both vaccination documents reflect that Plaintiff received a vaccination for Bacillus Calmette-

---

[3] Plaintiff's parents later secured the amendment of the Mexican Birth Certificate, but not until 2010. (*See* Mexican Judicial Order (DX7), Doc. 74–7)

[4] The Texas Birth Certificate also contains a United States mailing address for Cortez, although she testified that the address belonged to one of her friends.

Guérin ("BCG") on June 25, 1999.  The Court takes judicial notice that in 1999, the BCG vaccine for tuberculosis did not form part of the United States Childhood Immunization Schedule.[5]

In August 2001, Cortez and Gaona baptized Plaintiff, recording his birthplace as Hidalgo, Texas.

From August 2002 to May 2003, Plaintiff attended Kelly Elementary School in Hidalgo, Texas.  He completed the rest of his education in Mexico.  While living there, Plaintiff obtained a Mexican driver's license and voter registration card, the latter of which he used once to vote in Mexican elections.

## II.    Analysis and Conclusions of Law

Plaintiff brings this declaratory judgment action under 8 U.S.C. § 1503(a), which provides a mechanism for an individual within the United States to challenge the denial of a right or privilege based on the determination of his citizenship.

### A.  Applicable Standards

Under Section 1503(a), "[t]he Court must make a *de novo* determination of whether a plaintiff is a United States citizen." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014).  "There are two sources of citizenship, and two only: birth and naturalization." *Thomas v. Lynch*, 796 F.3d 535, 538 (5th Cir. 2015) (quoting *Bustamante–Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006)).  In the current matter, Plaintiff claims he acquired citizenship at the time of his birth by virtue of being born in the United States.

In a Section 1503(a) case, the district court holds a bench trial and weighs the evidence, determines the credibility of witnesses, and resolves conflicting testimony. FED. R. CIV. P. 52(a)(1),

---

[5] *See* NOTICE TO READERS RECOMMENDED CHILDHOOD IMMUNIZATION SCHEDULE – UNITED STATES, 1999, CTR. FOR DISEASE CONTROL (Jan. 15, 1999), https://www.cdc.gov/mmwr/preview/mmwrhtml/00056261.htm; *see also* FED. R. EVID. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

(6); *United States v. Jennings*, 726 F.2d 189, 190 (5th Cir. 1984). A plaintiff must prove his claim to citizenship by a preponderance of the evidence. *Escalante v. Clinton*, 386 F. App'x 493, 496 (5th Cir. 2010) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958)). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (cleaned up). In essence, if the evidence demonstrates only that it is equally likely that the plaintiff was born in a foreign country as in the United States, the plaintiff has not carried his burden.

"A contemporaneously filed foreign birth record creates a presumption of alienage," although that presumption can be rebutted. *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014), *aff'd*, 648 F. App'x 386 (5th Cir. 2015). Similarly, a contemporaneously filed birth certificate in Texas creates a presumption of birth in the state. *See Garcia*, 915 F. Supp. 2d at 834 (noting a state birth certificate is considered "primary evidence of birth in the United States" for purposes of determining citizenship); *see also* TEX. HEALTH & SAFETY CODE ANN. § 191.052 (stating that a copy of a birth certificate "that is certified by the state registrar is prima facie evidence of the facts stated in the record"). The Fifth Circuit has not defined the boundaries for a contemporaneously-filed birth certificate, and district courts have accepted birth certificates as contemporaneously filed even when registered weeks after the birth, depending upon the circumstances of the registration. *See, e.g.*, *Garcia v. Pompeo*, No. 1:18-CV-59, 2019 WL 13164664, at *4 (S.D. Tex. Dec. 2, 2019) (accepting a Mexican birth certificate registered 11 days after the birth to be contemporaneously filed); *Candela-Rios v. Lynch*, No. SA-16-MC-00220-JWP, 2017 WL 11046200, at *14 (W.D. Tex. Jan. 9, 2017), *aff'd sub nom. Candela-Rios v. Sessions*, 737 F. App'x 187 (5th Cir. 2018) (concluding that a birth certificate filed three days after the birth had been contemporaneously filed); *Cobos v. Kerry*, No. CIV.A. H-13-02897, 2015 WL 3965660, at *7 (S.D. Tex. June 30, 2015) (concluding that a birth certificate filed eight

days after the birth had been contemporaneously filed); *Trevino v. Pompeo*, No. 5:16-CV-139, 2019 WL 13261429, at *5 (S.D. Tex. Sept. 13, 2019) (accepting Plaintiff's Mexican birth certificate, purportedly registered 54 days after its reported birth, to have been filed contemporaneously).

When birth certificates exist from both Mexico and a state of the United States, but one document significantly predates the other, courts generally afford the delayed birth certificate less evidentiary weight compared to the more contemporaneously issued birth certificate. *See, e.g.*, *De La Cruz Vargas v. Blinken*, 569 F. Supp. 3d 556 (S.D. Tex. 2021), *appeal dismissed sub nom. Vargas v. Blinken*, No. 22-40007, 2022 WL 2448086 (5th Cir. Feb. 28, 2022) (affording less evidentiary weight to a 1974 delayed Texas birth certificate than to a 1968 Mexican birth certificate); *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275 (S.D. Tex. June 27, 2014), *aff'd*, 648 Fed. Appx. 386 (5th Cir. 2015) (placing less evidentiary weight to a 1988 delayed Texas birth certificate than to a 1987 Mexican birth certificate). In these cases, however, the difference in dates of registry between the two documents typically spans months or even years.

Baptismal certificates, medical records, and school records constitute evidence of an individual's birthplace, but courts consider such documents as "secondary evidence." *See, e.g.*, *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012).

As for testimony, courts weigh the credibility of witnesses, but receive a plaintiff's self-serving statements and those of interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871; *see also Garcia*, 915 F. Supp. 2d at 835; *Patel v. Rice*, 403 F. Supp. 2d 560, 565 (N.D. Tex. 2005), *aff'd*, 224 F. App'x 414 (5th Cir. 2007).

### B.  Application

Applying the governing standard and legal principles to the evidence admitted at trial, the Court concludes that Plaintiff has established by a preponderance of the evidence that he was born in the United States.

The trial witnesses consistently testified that Cortez visited midwife Salinas at the Santa Maria Maternity Clinic in Hidalgo, Texas for prenatal care and ultimately for Plaintiff's birth. While the witnesses' testimony contained some inconsistencies, such as the exact time that Plaintiff's parents arrived at the clinic or whether Salinas had an assistant or secretary present, the Court finds the witnesses' testimony credible.  Given the passage of more than twenty years since Plaintiff's birth, the Court does not consider relatively-minor discrepancies as undermining the witnesses' credibility.

In addition, the records from the Santa Maria Maternity Clinic corroborate the witnesses' recollections.  Salinas recognized the documents as those that she typically prepared for the babies that she delivered.  One record contains Cortez's fingerprint, reflecting a June 11 date "before the birth," with a second fingerprint on June 12 "after the birth." (Clinic Record (PX3), Doc. 72−3, 4) The clinic's "Birth Certificate" includes a baby's footprint and a picture of a newborn who Cortez and Gaona identified as Plaintiff.  And the payment receipt that the clinic issued to Gaona reflects an amount consistent with the packages that Salinas provided to clients at that time.  These documents provide strong evidence consistent with the witnesses' testimony regarding Plaintiffs' birth.  No evidence called into question these documents' authenticity, or suggested that Salinas had fabricated the information in those records.

The Government reasonably highlights the Mexican Birth Certificate that Plaintiff's parents obtained nine days after his birth, with Mexico recorded as the birthplace.  Javier Cavazos Adame, a Criminal Fraud Investigator for the United States Consulate General, testified that the word "PART" on the Mexican Birth Certificate meant "particular," meaning that the birth

occurred in a private medical institution and not at "a state run medical facility." (Cavazos Deposition (PX9), Doc. 73–2, 11:11–22; Cavazos Rpt. (DX34), Doc. 75–15, 9–10)  He explained that to obtain such a birth certificate in Mexico, parents would have to present a document entitled "Certificado de Nacimiento," reporting the baby's birth in a Mexican private hospital. (Cavazos Rpt. (DX34), Doc. 75–15, 9–10)  In the present case, the record does not include a Mexican "Certificado de Nacimiento" for Plaintiff.  The absence of this document, however, did not surprise Cavazos, who testified that in the late 1990's, the Mexican "civil registry often destroy[ed] supporting documents used to register births after two to five years." (*Id.* at 11)  Cavazos acknowledged that the Government did not ask him to opine as to the validity of the Mexican Birth Certificate, but to merely review the government record and explain the meaning of the "stated information on the document." (Cavazos Deposition (PX9), Doc. 73–2, 14:15–23)

The Court attributes only modest weight to Cavazos's testimony.  He testified about the meaning of "PART" on the Mexican Birth Certificate and the documentation that would typically result in that designation.  But he provided no testimony to controvert Cortez's and Gaona's testimony regarding their efforts to record Plaintiff's birth as having occurred outside of Mexico, only to be told by Mexican officials that they had to register the birth as taking place within the country.  In essence, Plaintiff's parents concede that they knowingly obtained Mexican records misrepresenting the location of their son's birth.  But they provided a plausible explanation for their actions, and Cavazos's opinions did not undermine their credibility.

Based on the trial record, the Court places equal weight on the Texas and Mexican Birth Certificates, which effectively means that they negate one another.  Gaona and Cortez registered their son's birth first in Mexico, but did not do so until ten days after he was born.  Another ten days later, but still within three weeks of Plaintiff's birth, Salinas completed the registration in Hidalgo, Texas.  And she explained why she did not immediately register the birth, with no evidence rebutting her testimony.  As compared to one another, each birth document was

recorded equally contemporaneous to Plaintiff's birth. Overall, the close temporal proximity of the two documents, coupled with the circumstances surrounding their registry and the subsequent amendment of the Mexican document, leads the Court to place equal weight on both records.[6]

The Government also challenges the credibility of Gaona and Cortez by arguing that although Cortez testified that Plaintiff received all of his vaccinations in Texas, other facts call this testimony into question. First, the Government points out that the Texas Department of State Health Services' vaccination history for Plaintiff does not contain information required by the National Childhood Vaccine Injury Act of 1986 (NCVIA), which governed during Plaintiff's birth and infancy. In particular, the Texas vaccination record omits the manufacturer and lot number for many purported vaccinations, even though the NCVIA required that healthcare providers administering vaccines report this information. *See* 42 U.S.C. § 300aa-25(a) (effective December 22, 1987). Second, the Government contends that in 1999, the Center for Disease Control did not include the BCG vaccine within the recommended immunization schedule. Based on the absence of the required information and the fact that Plaintiff allegedly received a non-recommended vaccine, the Government contends that the vaccination records reflect falsa data, calling into question Cortez's adamant testimony that she vaccinated Plaintiff in Texas.

The Court agrees that Plaintiff's purported vaccination history runs counter to statutory requirements at the time, and that this fact casts some doubt on the veracity of the testimony that Plaintiff received all of his vaccinations in Texas. Still, despite these discrepancies, the Court does not view the evidence as sufficiently strong to overcome the overall testimonial and documentary evidence regarding Plaintiff's place of birth, as opposed to where he received vaccinations after

---

[6] Plaintiff highlights that both birth certificates now reflect a birth in Texas, as his parents amended the Mexican Birth Certificate in 2010. However, Cavazos downplayed the significance of the amendment, noting that tribunals approving such amendments, in proceedings that often go uncontested, typically do not have to resolve a contested issue as to the individual's birth. The Court accepts Cavazos's testimony on this issue and does not ascribe significant weight to the amended birth record.

his birth.  In addition, as to the purported BCG vaccine, the fact that the U.S. Childhood Immunization Schedule did not include that vaccination in 1999 is not evidence that Plaintiff could not have obtained it in Texas.  The record contains no evidence concerning the availability of the vaccine within the state during the relevant time period, irrespective of whether the government recommended the vaccine.

Viewing the entire trial record as a whole, the Court concludes that the preponderance of the evidence demonstrates that Cortez gave birth to Plaintiff in Hidalgo, Texas, on June 12, 1999, and that, as a result, he is a national of the United States.

## IV.    Conclusion

Based on the Court's findings of fact and the applicable law, it is:

**ORDERED** that Defendants' Motion for Judicial Notice that the BCG Vaccine was Not Part of the Immunization Schedule in the United States (Doc. 76) is **GRANTED IN PART** and **DENIED IN PART**, to the extent explained in this Order and Opinion; and

**ORDERED** that Plaintiff Diego Armando Solis's request for a declaratory judgment is **GRANTED**.

The Court will separately issue a Final Declaratory Judgment in accordance with this Order and Opinion.

Signed on March 12, 2025.

*Fernando Rodriguez, Jr.*
Fernando Rodriguez, Jr.
United States District Judge